IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEANGELO WEIR, | ) |
|     Plaintiff, | ) |
| | ) NO. 3:19-cv-00131 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| CENTURION, et al., | ) |
|     Defendants. | ) |

**MEMORANDUM OPINION**

Deangelo Weir, an inmate at the Riverbend Maximum Security Institution in Nashville, Tennessee, filed this *pro se* civil rights action under 42 U.S.C. § 1983 against Centurion and its employees, two John Does, two Jane Does, James Holloway, Linda Jordan, and Maria Fite. (Doc. No. 1.) He also filed an application to proceed in this Court without prepaying fees and costs (Doc. No. 2), and a motion requesting his medical records (Doc. No. 5).

**I.  Application to Proceed as a Pauper**

The Court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's *in forma pauperis* application (Doc. No. 2) that he lacks sufficient financial resources from which to pay the full filing fee in advance, his application will be granted. Plaintiff will be assessed the $350.00 filing fee as directed in the accompanying Order. 28 U.S.C. § 1915(b)(1).

**II.  Initial Review**

Under the screening requirements of the Prison Litigation Reform Act ("PLRA"), the Court must conduct an initial review and dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who

is immune from such relief. 28 U.S.C. §§ 1915A, 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1). The Court must also construe a *pro se* complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

### A. Factual Allegations

Plaintiff alleges that in June 2017, he had a diagnostic exam during his intake at Bledsoe County Correctional Complex. (Doc. No. 1 at 3, 13.) Plaintiff was designated as a chronic care inmate with asthma who should be seen by medical staff every ninety days, or as needed. (*Id.* at 3, 11, 13.) In June 2018, Plaintiff alleges, he was transported to DeBerry Special Needs Facility. (*Id.* at 3, 13, 15.)[1] While at DeBerry, Plaintiff submitted "numerous" sick calls requesting treatment for asthma symptoms, including shortness of breath and upper respiratory issues, but he did not receive any medical attention. (*Id.* at 3, 10–11, 13, 20.)

In July 2018, Plaintiff's inhaler was sent to DeBerry, but no Centurion personnel contacted him to receive it. (*Id.* at 10–11.) Centurion is a private entity contracted to provide medical services to inmates at Tennessee Department of Correction ("TDOC") facilities. (*Id.* at 5.) On August 14, 2018, Plaintiff was having trouble breathing and tried to retrieve his inhaler from the medical window during "medical callout." (*Id.* at 8, 12.) He told DeBerry staff members Linda Jordan and Maria Fite that his chest was hurting and he needed medical attention, but they did not let him go to the medical window and ordered him to return to his unit. (*Id.* at 8, 12, 18.) Plaintiff alleges that all other inmates were allowed normal access to the medical window. (*Id.* at 19.)

---

[1] Plaintiff first alleges that he transferred to DeBerry on June 1, 2017. (Doc. No. 1 at 3.) Elsewhere in the complaint, however, he alleges that he did so in June 2018. (*Id.* at 13, 15.) Based on the timeline of events presented in the complaint, the Court infers that the alleged transfer occurred on the later date.

That same day, Plaintiff filed a grievance regarding Jordan and Fite's actions. (*Id.* at 8–9, 14, 18.) He also filed a grievance regarding Centurion's refusal to answer his sick calls or provide medical treatment. (*Id.* at 8–9, 18.) Jordan did not process Plaintiff's grievances, in violation of TDOC policy. (*Id.* at 8–9, 11–12, 14, 18.) Fite was aware of the contents of Plaintiff's grievances, in violation TDOC's policy on grievance confidentiality. (*Id.* at 9, 14.) And Fite told Plaintiff that he would be transferred to another prison if he continued to file grievances. (*Id.* at 3, 8–9, 11, 14, 19.)

On November 26, 2018, Plaintiff alleges that Jordan, Fite, and DeBerry Warden James Holloway retaliated against him for filing grievances by transferring him to Northwest Correctional Complex (*id.* at 15)—"a lockdown prison hours away from [his] home" (*id.* at 10–12). According to Plaintiff, these three Defendants were aware that this transfer would "cause an excessive delay in him receiving his behavior/program credits to reach his Release Eligibility Date." (*Id.*) This transfer allegedly violated a TDOC policy stating that inmates within 90 days of their parole dates could not be transferred to another facility. (*Id.* at 20.)

A Northwest doctor told Plaintiff that his "breathing count" had decreased since his last medical treatment in April 2018. (*Id.* at 15.) The doctor put Plaintiff on a "prevention plan" to monitor his breathing, and ordered him to do "peak flow treatment" once a week. (*Id.* at 15–16.) The doctor also gave him an inhaler and told him that a steroid would be ordered for him. (*Id.* at 16.) On December 7, 2018, Plaintiff went to the Northwest clinic to begin his peak flow treatment, and he was informed that the doctor ordered chest x-rays because "she heard wheezing." (*Id.*)

At some point in December 2018, Plaintiff was transferred to Riverbend Maximum Security Institution, where he is currently incarcerated. (*Id.* at 3, 16.) He requested to review his medical records, but the medical records supervisor has not yet allowed him to do so. (*Id.*) On

January 31, 2019, Plaintiff met with a Riverbend grievance officer who informed him that his grievances from DeBerry were not documented. (*Id.*) She told Plaintiff to file another grievance with the original grievance attached, and she would forward it to DeBerry. (*Id.* at 16–17.) On February 6, 2018, Plaintiff visited a nurse practitioner at Riverbend who ordered blood work and prescribed him "proper medication." (*Id.* at 17.)

Plaintiff requests monetary damages, injunctive relief in the form of five years of medical treatment after his release from incarceration, and a declaratory order that Defendants violated his constitutional rights. (*Id.* at 21.)

### B. Standard of Review

To determine whether a prisoner's complaint "fails to state a claim on which relief may be granted" under the PLRA, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not, however, extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### C. Discussion

"To prevail on a cause of action under § 1983, a plaintiff must prove '(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting

under the color of state law.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

        **1.**     **Doe Defendants**

Plaintiff names two John Does and two Jane Does as defendants, alleging that he did not receive the names of Centurion employees responsible for his lack of medical treatment at DeBerry. (Doc. No. 1 at 1–2.) Plaintiff does not, however, refer in the complaint to any individual as John Doe or Jane Doe when describing the acts or omissions of an individual. Also, he does not identify unconstitutional conduct by any specific unnamed individuals. Even under the liberal construction afforded to *pro se* plaintiffs, the Court "is not required to accept non-specific factual allegations and inferences or unwarranted legal conclusions," and a plaintiff "must allege that the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (citations omitted) (affirming dismissal of a *pro se* prisoner's complaint for failure to state a claim where the plaintiff "failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights"). Accordingly, the four Doe Defendants will be dismissed as parties.

        **2.**     **Centurion**

Plaintiff also names Centurion "and its employees" as defendants. (Doc. No. 1 at 1.) Centurion is a private entity contracted to provide medical care to inmates in TDOC facilities. To the extent that Plaintiff is seeking to sue any unnamed Centurion employees, he fails to state a claim for the same reason discussed above—he does not allege that specific unnamed Centurion employees "were personally involved" in the alleged deprivation of medical care. *See Frazier*, 41 F. App'x at 764.

5

As to Centurion itself, "private corporations performing traditional state functions, such as the provision of medical services to prison inmates, act under color of state law for purposes of [Section] 1983." *Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 736 (6th Cir. 2015) (citing *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 453 (6th Cir. 2014)). But private entities acting under color of state law cannot be held vicariously liable for the actions of their employees. *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (citations omitted). For Centurion to be liable under Section 1983, Plaintiff must demonstrate that Centurion had a "policy or custom" that was "the moving force behind" the alleged deprivation of Plaintiff's constitutional rights. *Id.* (quoting *Miller v. Sanilac Cty.*, 606 F.3d 240, 255 (6th Cir. 2010)). Here, Plaintiff makes no such allegation. He alleges that he has been housed at four Centurion-contracted facilities—Bledsoe County Correctional Complex, DeBerry Special Needs Facility, Northwest Correctional Complex, and Riverbend Maximum Security Institution—and that he received inadequate medical care at only one—DeBerry. Thus, even liberally construing the complaint, it would be unreasonable to infer that the alleged constitutional deprivations Plaintiff experienced at DeBerry were related to a policy or custom of Centurion. Plaintiff, therefore, fails to state a claim against Centurion.

### 3. Official-Capacity Claims Against Holloway, Jordan, and Fite

It is unclear whether Plaintiff brings this action against Defendants James Holloway, Linda Jordan, and Maria Fite (the "DeBerry Defendants") in their individual capacities, official capacities, or both. In considering both constructions of Plaintiff's claims, however, it is clear that Plaintiff fails to state an official-capacity claim.

"[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Here, the DeBerry Defendants represent the Tennessee Department of

Correction. (Doc. No. 1 at 4.) Plaintiff's official-capacity claims for monetary damages against the DeBerry Defendants will be dismissed because the TDOC is an "agenc[y] of the state of Tennessee" that is "entitled to Eleventh Amendment immunity from suit for damages." *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 454 (6th Cir. 2012) (internal citations omitted). Likewise, Plaintiff's official-capacity claims for injunctive or declaratory relief against the DeBerry Defendants will be dismissed because Plaintiff does not allege that a TDOC policy or custom caused his constitutional deprivations. *See Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) (explaining that a government entity is only liable for violations caused by its own policy or custom, not the policy of a private entity to whom it is contracted). Indeed, Plaintiff alleges that the DeBerry Defendants failed to follow various TDOC policies (Doc. No. 1 at 8–9, 20), not that these policies caused a violation of his constitutional rights. Accordingly, Plaintiff fails to state a claim against the DeBerry Defendants in their official capacities.

### 4. Individual-Capacity Claims Against Holloway, Jordan, and Fite

As to individual-capacity claims, Plaintiff alleges that the DeBerry Defendants refused to process his grievances and failed to follow TDOC policies. But these allegations fail to state a claim because "a prisoner has no constitutional right to an effective prison grievance procedure, *see Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (citing *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)), and claims related to violations of prison policies do not state a constitutional violation, *see Grinter* [*v. Knight*], 532 F.3d [567,] 574 [(6th Cir. 2008]." *Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017).

Plaintiff also alleges that he did not receive any medical treatment while he was housed at DeBerry from June 2018 through November 2018. The Eighth Amendment imposes a duty on prison officials to provide convicted inmates adequate medical care. *Shadrick*, 805 F.3d at 736–37

(citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "For the failure to provide medical treatment to constitute a constitutional violation, [a plaintiff] must show that the defendants acted with 'deliberate indifference to serious medical needs.'" *Dominguez*, 555 F.3d at 550 (quoting *Estelle*, 429 U.S. at 104). "A constitutional claim for deliberate indifference contains both an objective and a subjective component. The objective component requires a plaintiff to show the existence of a 'sufficiently serious' medical need." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "The subjective component, in contrast, requires a plaintiff to 'allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

Here, Plaintiff alleges that, before he arrived at DeBerry, staff at Bledsoe County Correctional Complex designated him as an asthma patient requiring chronic care who should be seen by medical staff every ninety days, or as needed. He also alleges that he experienced shortness of breath and upper respiratory issues while at DeBerry. The Court concludes that these allegations satisfy the objective component of Plaintiff's deliberate indifference claim for the purpose of initial review. *See Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004)) ("A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'").

Plaintiff also satisfies the subjective component of this claim against Defendants Jordan and Fite, but not Holloway. In August 2018, Plaintiff alleges, he made Jordan and Fite aware of his medical needs when he told them that he had chest pain and needed medical treatment. Jordan and Fite then disregarded that that need by ordering Plaintiff to return to his unit rather than retrieve

8

his inhaler from the medical window. Accordingly, the Court concludes that Plaintiff has stated an Eighth Amendment claim against Jordan and Fite for deliberate indifference to his serious medical needs. As to Defendant Holloway, however, Plaintiff does not allege that he was personally involved in the alleged denial of medical treatment. *See Winkler v. Madison Cty.*, 893 F.3d 877, 891 (6th Cir. 2018) (quoting *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 542 (6th Cir. 2008)) ("[T]he subjective component of a deliberate indifference claim must be addressed for each officer individually."). Thus, Plaintiff fails to state a claim for denial of adequate medical care against Holloway.

Finally, Plaintiff asserts a retaliation claim against Defendants Holloway, Jordan, and Fite. An inmate has a First Amendment right to be free from retaliation for engaging in constitutionally protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To state a retaliation claim, Plaintiff must allege that: (1) he engaged in protected conduct; (2) he suffered an adverse action "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) "the adverse action was motivated at least in part by [his] protected conduct." *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Thaddeus-X*, 175 F.3d at 394). Here, the Court concludes that Plaintiff has stated a retaliation claim against all three DeBerry Defendants.

First, Plaintiff engaged in protected conduct by allegedly filing grievances requesting medical treatment. *See id.* (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)) ("An inmate has an undisputed First Amendment right to file [non-frivolous] grievances against prison officials on his own behalf."); *see also Hill*, 630 F.3d at 472 (finding, under the screening requirements of the PLRA, that an inmate engaged in protected conduct by filing grievances despite having "no details about those grievances beyond [the inmate's] allegations"). Second, Plaintiff alleges that Holloway, Jordan, and Fite retaliated against him for filing these grievances

9

by transferring him to "a lockdown prison hours away from [his] home." (Doc. No. 1 at 10–12.) Plaintiff's transfer to the lock-down unit at another facility "constitutes an adverse action because the transfer would foreseeably lead to a living environment with more restrictions and fewer privileges than in the prison's general population." *Hill*, 630 F.3d at 475. Third, Plaintiff's allegation that this adverse action was causally connected to his grievances is sufficient to satisfy the final element of a retaliation claim at this juncture. *See LaFountain v. Harry*, 716 F.3d 944, 949 (6th Cir. 2013) (finding an inmate's allegation of "causal[] connection" sufficient to satisfy the third element of a retaliation claim under the PLRA's screening requirements).

## III. Conclusion

For these reasons, Plaintiff's individual-capacity deliberate indifference claims against Defendants Jordan and Fite will be referred to the Magistrate Judge for further proceedings consistent with the accompanying Order, as will Plaintiff's individual-capacity retaliation claim against Defendants Holloway, Jordan, and Fite. All other claims and defendants will be dismissed. Plaintiff's motion requesting his medical records (Doc. No. 5) will be also be referred to the Magistrate Judge.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE